# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BECKER a/k/a/ CINNAMON BECKER,<br><br>**Plaintiff**<br><br>v.<br><br>SHERMAN, et al.,<br><br>**Defendants** | CASE NO. 1:16-CV-828 AWI JDP (PC)<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 90) |

This case arises from a dispute over whether Plaintiff Becker, an anatomically-male prisoner who identifies as female, has a right to a "permanent single-cell designation" while she is housed at all-male facilities in the California prison system. Plaintiff alleges that Defendants—eight employees of the California Department of Corrections and Rehabilitation ("CDCR")—have continually placed her at risk of being assaulted when she is placed in a double cell with a male prisoner. Thus, Plaintiff maintains that by failing to protect her from a substantial risk of serious harm, Defendants have violated her Eighth Amendment right to be free from cruel and unusual punishment.

Defendants now move for summary judgment. Five of the Defendants contend Plaintiff has failed to exhaust her claims against them. Additionally, the six "official capacity" Defendants claim qualified immunity.

For the reasons that follow, the Court will (I) grant in part and deny in part Defendants' summary judgment motion on the lack-of-exhaustion issue, and (II) deny Defendants' claim to qualified immunity.

# BACKGROUND[1]

Plaintiff is an anatomically-male transgender inmate who has identified as female since she was a young child. Doc. No. 96 at ¶ 1 (decl. Becker). She has been housed at various CDCR facilities since at least 1999. Id. Defendants are best grouped as follows:

(1) Lieutenant Maximo Lunes and Captain C. Moreno were officers stationed at the Substance Abuse Treatment Facility ("SATF") in Corcoran, California; they wrote and reviewed the order assigning Plaintiff to double-celled housing in the Spring of 2016. They are sued in their individual capacity;

(2) Lieutenant L. Cartagena, M. Charkow-Ross, and N. Peterson were members of the July 2016 Institutional Classification Committee (the "SATF Committee"); each participated in the decision to transfer Plaintiff to the Sierra Conservation Center ("SCC") in Jamestown, California, and to classify her as eligible for "temporary" single-cell housing. Each are sued in their official capacity;

(3) J. Wetenkamp and Captain K. Loyd were members of the November 2016 SCC Unit Classification Committee (the "SCC Committee"); each participated in the decision to affirm the SATF Committee's temporary designation for Plaintiff's single-cell housing. Further, Warden Martinez was the SCC warden at this time, and denied Plaintiff's request for permanent single-cell housing. They are each sued in their official capacity.

See Doc. No. 66 at p. 2-5 (Plaintiff's Second Amended Complaint, the "2AC").

Plaintiff alleges she was harassed and sexually assaulted by other prisoners on multiple occasions between 1999-2016; some of these occurred when she was allegedly placed in a double cell and housed with another prisoner. See Id. Plaintiff's allegations demonstrate a pattern where prison officials transfer her from one facility to another after these events. See Id.

The portion of Plaintiff's allegations relevant to this Order begins on May 3, 2016, when Plaintiff was transferred to SATF. Doc. No. 96 at ¶ 10. There, she was placed in a double cell with prisoner Dallas Rebello; a month later, Rebello sexually assaulted Plaintiff. Id. at ¶ 11. Plaintiff reported the incident to Defendant Lt. Maximo Lunes, who allegedly "disregarded Ms. Becker's account of the sexual assault, falsely claimed that [her] wounds were self-inflicted, and misrepresented the facts of the incident by describing it as a standard battery rather than a sexual

---

[1] The facts are construed in the light most favorable to Plaintiff, the non-moving party. Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).

assault . . . ." Doc. No. 101 at p. 24 at ¶ 11 (Plt. Disputed Facts); see also Doc. No. 96 at ¶ 11. Lunes assigned Plaintiff to Administrative Segregation, while allegedly manipulating Plaintiff's account of the incident in his report, referring to her transfer as necessary because she "had an enemy." Doc. No. 24-1 (Plt. Ex. A, "Ad-Seg. Placement Notice 6/7/16"). The following day, Plaintiff reported the incident to Defendant Capt. Moreno, who allegedly "did not act on this information" but instead assigned her to another SATF building. Doc. No. 96 at ¶ 13. There, Plaintiff was initially placed in a single cell, but was quickly moved into a double cell with prisoner Kenneth Wilson. Id. at ¶ 14. Plaintiff "often pleaded with Lt. Lunes for single cell housing status"; Lunes responded by indicating Wilson would be moved, though this did not occur. Id.

On June 15, Plaintiff filed a complaint with the Court against Lt. Lunes, among others not a party to the current dispute. See Doc. No. 1. Plaintiff contended Lt. Lunes "purposely misconstrued the meaning of my clear report—and misaccepted [sic] my report to mean that inmate Rebello had committed a standard battery upon me, rather than a sexual battery rape attempt which I had clearly stated . . . ." Id. at p. 3-4. Plaintiff indicated, via the checkboxes on this form, that she had exhausted her administrative remedies. Id. at p. 2. The CDCR has no record of any grievances filed or exhausted about the Rebello incident, but did record one grievance filed in June against Lunes concerning a missing radio. See Doc. No. 90-3 to 90-7.

On June 29, Wilson raped Plaintiff in their shared cell. Doc. No. 96 at ¶ 15.

Eight days later, the SATF Committee, including Defendants Cartagena, Peterson, and Charkow-Ross, met to evaluate Plaintiff's housing assignment. Id. at ¶ 16. The Committee decided to transfer Plaintiff to SCC, and designate her as eligible for single-celled housing "pending investigation of Plaintiff's claims concerning Wilson." Doc. No. 101 at p. 26-27.

Plaintiff immediately filed a grievance. Id. at p. 27. Therein, she stated that the Wilson rape "warrants clearance for me to be single cell status." Doc. No. 95-4 (Pl. Ex. D, Grievance "SATF-03027"). She requested "single-cell status, when the Title 15 provides that it should have been a designation assigned to my classification criteria." Id. After she was transferred to SCC, Plaintiff filed a companion grievance "requesting that the single-cell designation be made for

reasons beyond any PREA investigation results [from the Wilson investigation]. ICC only temporarily designated me." Doc. No. 95-5 (Pl. Ex. E, Grievance "SCC-964").

In late October-early November, Warden Martinez reviewed Plaintiff's file and previous grievances, became aware of the sexual nature of her previous assaults, and denied her request for permanent single-cell housing. Doc. No. 101 at p. 29. On November 21, the SCC Committee affirmed the decision of the SATF Committee, deciding to continue Plaintiff's single-cell designation as a temporary measure while the Wilson investigation was still pending. Id. at 27-28.

On January 19, 2017, the CDCR Office of Appeals released its Third-Level Appeals Decision, denying Plaintiff's request for a permanent single-cell designation brought in Grievances SATF-3027 and SCC-964. Doc. No. 95-6 (Pl. Ex. F, "Third Level Appeal Denial"). The decision stated it "exhaust[ed] the administrative remedies available to the appellant within CDCR." Id.

Plaintiff filed her first amended complaint ("1AC") on April 6, 2017, alleging an Eighth Amendment violation against Defendants Lunes, Moreno, Cartagena, Charkow-Ross, Peterson, Martinez, Wetenkamp, and Loyd (among others irrelevant to this Order). See Doc. No. 24. The operative 2AC alleges similar allegations against these eight defendants. See Doc. No. 66. Defendants Lunes and Moreno are sued in their individual capacity, and the remaining six in their official capacity. Id. Plaintiff prayed for the following relief:

- Injunctive relief granting Ms. Becker permanent single cell status at facilities while under the custody of the [CDCR];
- For damages, including for physical and emotional pain and suffering;
- For punitive damages, for acting maliciously and with wanton disregard for Ms. Becker's safety;
- For an Order awarding Ms. Becker any fees and costs;
- [and any other relief just and proper].

Doc. No. 66 at p. 25.

**DISCUSSION**

Defendants' motion raises two distinct issues for summary judgment consideration: (I) Whether Plaintiff failed to exhaust her administrative remedies against five of the Defendants; and (II) whether the six "official capacity" Defendants are entitled to qualified immunity.

4

## I. Plaintiff exhausted her administrative remedies against all Defendants

*Parties' Arguments*

Defendant members of the SATF Committee (Cartagena, Charkow-Ross, Peterson) admit that Plaintiff exhausted her administrative remedies against them via SATF-3027. Plaintiff submitted this grievance on July 7th, 2016, concerning the SATF Committee's denial of her request for permanent single-cell designation, and it was processed through third level review. However, the remaining five Defendants (SATF Officers Lunes and Moreno, SCC Committee Members Wetenkamp and Loyd, and SCC Warden Martinez) contend Plaintiff's allegations in her 2AC were not exhausted by this or any other grievance. They argue SATF-3027 does not mention them or otherwise discuss any of the allegations made in Plaintiff's 2AC concerning them. Thus, since the grievance system was available to Plaintiff during this time, these five Defendants maintain summary judgment should issue in their favor.

Plaintiff counters her remedies were exhausted by SATF-3027 (as well as other grievances stored in her central file), arguing two reasons why. First, she contends that those responsible for the assignment and classification of prisoners (all eight Defendants, as she contends) were aware of the nature of the wrong—failing to protect her by not granting her permanent single-cell status—and so her failure to name the Defendants or provide more specific detail on her grievance forms should not bar her suit. Plaintiff also counters that issue was continuous and ongoing, and so grievance SATF-3027 was sufficient to demonstrate exhaustion.

*Legal Standard for Summary Judgment on Exhaustion*

Exhaustion under the Prison Litigation Reform Act is best determined on summary judgment under Rule 56. Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014). It is the defendants' burden to prove both the availability of the administrative remedy and the failure to exhaust. Id. at 1172. If the defendant meets that burden, the prisoner must then present evidence showing that something in the case made the existing and generally available administrative remedies effectively unavailable. Id. If undisputed evidence—viewed in the light most favorable to the prisoner—shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. Id. at 1166.

*Analysis*

The PLRA mandates that prisoners exhaust all available administrative remedies before filing any suit—including § 1983 suits—challenging prison conditions. Albino, 747 F.3d at 1171 (citing Woodford v. Ngo, 548 U.S. 81, 85 (2006)); 42 U.S.C. § 1997e(a). A prisoner must not only to pursue every available step of the prison appeal process, but also must adhere to "deadlines and other critical procedural rules" of that process. Woodford, 548 U.S. at 90. This strict regime exists to "ensure that the prison receives the opportunity to correct its own mistakes . . . before it is haled into federal court." Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017). Thus, it is the prison's regulations, and not the PLRA, that define the boundaries of proper exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

The CDCR grants any inmate under its jurisdiction the right to appeal "any policy, decision, action, condition, or omission by the department or its staff" that has "a material adverse effect upon [the inmate's] health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). CDCR's appeal process consists of three levels: (1) first level appeal filed with one of the institution's appeal coordinators; (2) second level appeal filed with the institution head or designee; and (3) third level appeal filed with the CDCR director or designee. Id. §§ 3084.7, 3084.8. A prisoner exhausts CDCR's appeal process by obtaining a decision at each level. Id. § 3084.1(b); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010). To properly exhaust an issue within CDCR's appeal process, an appeal must "list all staff member(s) involved," describe the nature of their involvement and "state all facts known and available . . . regarding the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3)-(4).

Despite the existence of this process, the Ninth Circuit has held that a grievance will suffice "if it alerts the prison to the nature of the wrong for which redress is sought." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010); Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010). "The grievance 'need not include legal terminology or legal theories,' because 'the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.'" Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (quoting Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)). "The grievance process is only required to 'alert

prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" Reyes, 810 F.3d at 659 (quoting Jones v. Bock, 549 U.S. 199, 219 (2007)). Thus, the key to determining what claim(s) Plaintiff exhausted requires the Court to determine the substance of Plaintiff's grievance (SATF-3027), examine how prison officials treated the grievance, and verify it was properly exhausted under California regulations.

As Defendants note, SATF-3027 does not specifically reference any Defendant by name. See Doc. Nos. 90-3 to -7. This is of course a violation of § 3084.2(a)(3)-(4) of California administrative regulations. However, under Reyes, a prisoner has exhausted an issue under the PLRA if the grievance "is decided on the merits at all available levels of administrative review despite a failure to comply with a procedural rule." 810 F.3d at 656. SATF-3027 was reviewed by all three levels, and the reviewers did not dismiss Plaintiff's grievance for lack of the names. Therefore, this alone will not bar Plaintiff's claim. Instead, the Court must look at the substance of the allegations in the grievance, to make sure they relate to those alleged in the lawsuit. Id. at 659.

### A. Plaintiff did not exhaust her claim against to Lunes and Moreno

A careful review of Grievance SATF-3027 indicates Plaintiff's claim in her complaint were not sufficiently expressed so as to alert the prison to the alleged wrong regarding Lunes and Moreno's conduct, and the administrative remedies were available to her.

The allegations in Plaintiff's complaint against Lunes and Moreno concern the actions these two officers took during and just after the Rebello incident. Doc. No. 96 at ¶ 11. Plaintiff alleges that she reported Rebello's assault to Lunes, who "disregarded [her] account of the sexual assault, falsely claimed that [her] wounds were self-inflicted, and misrepresented the facts of the incident by describing it as a standard battery rather than a sexual assault . . . ." Doc. No. 101 at p. 24 at ¶ 11; see also Doc. No. 96 at ¶ 11. Lunes assigned Plaintiff to Administrative Segregation ("Ad-Seg"), while allegedly manipulating Plaintiff's account of the incident in his report, referring to her transfer as necessary because she "had an enemy." Doc. No. 24-1 (Plt. Ex. A, Ad-Seg. Placement Notice 6/7/16). The following day, Plaintiff reported the incident to Defendant Capt. Moreno, who allegedly "did not act on this information" but instead assigned her to another SATF

7

building. Doc. No. 96 at ¶ 13. After Plaintiff was placed in a double cell with prisoner Wilson, Plaintiff alleges she "often pleaded with Lt. Lunes for single cell housing status[,]" but Lunes did nothing. Id. The remainder of Plaintiff's complaint concerns the actions of the SATF and SCC Committees in designating her housing status. See Id.

Conversely, the allegations in SATF-3027 all concerned Plaintiff's complaint that she was not being provided single-cell housing upon her transfer to SCC. Doc. No. 95-4. Not only are Lunes and Moreno not mentioned in SATF-3027, Plaintiff never once makes mention of the alleged falsification of the reports by Lunes (or approval of those reports by Moreno). See Id. Further, and critically, the action Plaintiff requested in SATF-3027 was that officials provide her with a single-cell designation after the Wilson investigation concluded; this is not an action Lunes or Moreno would have the power to institute. See Cal. Code Regs. Tit. 15, § 3376(d)(2)(A) ("*Unit Classification Committees* shall: Review each inmate's case at least annually to consider the accuracy of the inmate's classification score, custody designation, program, work privilege group, and facility placement.") (emphasis added). The allegations in SATF-3027 would not provide the prison with any notice that two of its employees were falsifying documents, much less give the prison the chance to remedy these infractions "before being haled into court." Manley, 847 F.3d at 711.

Defendants Lunes and Moreno have met their burden to show Plaintiff did not alert prison officials to her complaints against them. Further, Defendants have adequately demonstrated that the grievance process was not unavailable to Plaintiff during this time. The record indicates Plaintiff could have filed grievances during this time, and not only did she actually file one within a month of the Rebello incident (see SATF-3027), she also filed a grievance against Lunes concerning a missing radio. See Doc. No. 90-3 to 90-7. Thus, since SATF-3027 did not "alert[] the prison to the nature of the wrong for which redress is sought," Sapp, 623 F.3d at 824, and since no grievance was filed by Plaintiff concerning Lunes or Moreno's actions as related to the substance of her complaint (as expressed in the 2AC), the Court finds Plaintiff failed to exhaust her remedies as to this issue. Therefore, summary judgment must be granted in favor of Lunes and Moreno. Albino, 747 F.3d at 1172.

**B. Grievance SATF-3027 exhausted Plaintiff's claim as to Martinez, Wetenkamp, and Loyd due to the continuing nature of the issue**

As to Defendants Martinez, Wetenkamp, and Loyd, it would be impossible for Plaintiff to have alleged any complaint against them in SATF-3027, for these three Defendants did not participate in the decision to deny Plaintiff her permanent single-cell designation until November of 2016, well after the filing of this grievance. However, Plaintiff argues the law does not require her to put forth and exhaust an additional grievance against these three Defendants, as her allegations against them speak to an ongoing, continuing failure to protect her from sexual assault. Defendants maintain the Ninth Circuit has not recognized this "continuing violation" theory, and doing so would violate a recent Supreme Court holding.

The Ninth Circuit has yet to apply the continuing violations doctrine to issues of exhaustion in prisoner civil rights cases. As Plaintiff recognizes, however, multiple other circuits have. See Turley v. Rednour, 729 F.3d 645, 649-50 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing."); Johnson v. Killian, 680 F.3d 234 (2d Cir. 2012) (per curiam) (holding that a prisoner's 2005 exhausted grievance was sufficient to exhaust his 2007 claims based on a continuing violation when the 2005 grievance raised the identical issue); Parzyck v. Prison Health Servs. Inc., 627 F.3d 1215, 1219 (11th Cir. 2010) (holding that a prisoner was "not required to initiate another round of the administrative grievance process on the exact same issue each time" an alleged deprivation of rights occurred"); Howard v. Waide, 534 F.3d 1227, 1244 (10th Cir. 2008) (after plaintiff had exhausted a grievance regarding harassment and threats, he was not required to file a separate grievance for the same risks identified in the first grievance); Johnson v. Johnson, 385 F.3d 503, 521 (5th Cir. 2004) (stating that plaintiff was not required to file separate grievances to "exhaust claims that arose from the same continuing failure to protect him from sexual assault."). As Judge Koh of the Northern District of California aptly summarized: "Thus, according to these circuits, when a prisoner plaintiff grieves a continuing violation, he need not file 'multiple, successive grievances raising the same issue,' and can therefore satisfy his exhaustion requirement 'once the prison has

1  received notice of, and an opportunity to correct the problem.'" Saif'ullah v. Albritton, 2017 WL
2  2834119, at *9 (N.D. Cal. June 30, 2017) (quoting Turley, 729 F.3d at 650). Further, the Ninth
3  Circuit's principles concerning a continuing-violations theory in a statute-of-limitations context
4  demonstrates how this theory might work with prison exhaustion. In Pouncil v. Tilton, the Ninth
5  Circuit held that if the claim involves a "delayed, but inevitable, consequence" of a previously-
6  uncorrected wrong, it is part of a continuing violation. 704 F.3d 568, 581 (9th Cir. 2012). Only if
7  the more-recent incident involves an "independently wrongful, discrete act" should it be treated as
8  a separate, stand-alone claim. Id.

Applying the other circuits' continuing-violation theory to Plaintiff's facts, as guided by Pouncil, the Court finds Plaintiff's Grievance SATF-3027 adequately exhausted her claim as to Defendants Martinez, Wetenkamp, and Loyd. First, it is clear from Plaintiff's allegations that she intended to notify prison officials at both SATF and SCC that she was seeking protection from further sexual assault. This fear does not appear to be speculative either. Plaintiff expressed concern to Lunes about being housed with Rebello, and then was sexually assaulted by Rebello. Doc. No. 96 at ¶ 11. SATF officials moved Plaintiff into another double cell with Wilson, Plaintiff complained about the failure to protect her, and she was later raped by Wilson. Id. The SATF Committee transferred her to SCC, where she was granted single-cell housing only for the duration of the Wilson investigation, and fears a similar incident should SCC officials transfer her back to a double cell. Id. In a light most favorable to Plaintiff, this is a textbook example of a "delayed, but inevitable consequence." Pouncil, 704 F.3d at 581.

As discussed above, SATF-3027 concerned the SATF Committee's decision to deny Plaintiff a permanent single-cell designation, instead giving her temporary single-cell housing pending the outcome of the Wilson investigation. Doc. No. 101 at p. 26-27; see also Doc. No. 95-4. This grievance was exhausted on January 19, 2017. Doc. No. 95-6. After Plaintiff was transferred to SCC, she filed a companion grievance which was taken up with the SATF grievance and appeals. Doc. No. 95-5. Then, on November 21, the SCC Committee looked at Plaintiff's request for single-cell housing, affirmed the decision of the SATF Committee, and matintained Plaintiff's temporary single-cell designation while the Wilson investigation was still pending.

Doc. No. 101 at 27-28.  Additionally, Plaintiff alleges that in late October-early November, Warden Martinez reviewed Plaintiff's file and previous grievances, became aware of the sexual nature of her previous assaults, and also denied her request for permanent single-cell housing.  Id. at p. 29.  These facts, taken in a light most favorable to Plaintiff, indicate that Warden Martinez and SCC Committee Members Wetenkamp and Loyd were put on notice of Plaintiff's allegation of a continuing failure to protect her from sexual assault, had an opportunity to address her complaint, and decided against doing so.  Turley, 729 F.3d at 650.  Thus, under the "continuing violation" theory, Plaintiff need not have filed an additional grievance in November of 2016.  Id.; cf. Saif'ullah, 2017 WL 2834119, at *9 (applying the continuing violation theory, but granting defendants' summary judgment request on exhaustion grounds, where the plaintiffs' exhausted grievance—concerning prayer rights at sunset, which was granted—was separate and apart from a later allegation that the prison did not allow them to pray in the morning and afternoon); Grenning v. Klemme, 34 F.Supp.3d 1144 (W.D.Wa. 2014) (finding allegations in an exhausted grievance only concerned the handling of the prisoner's email, which was disconnected to the prisoner's broad allegations in his pleadings as to an ongoing retaliatory condition, such that prison officials would have known to broaden its investigation under the grievance).

Defendants contend any application of the "continuing violation" doctrine would run afoul of the Supreme Court's holding in Ross v. Blake, 136 S.Ct. 1850 (2016).  Ross, however, is inapposite.  Therein, the Supreme Court confronted a Fourth Circuit rule excusing a prisoner from the PLRA's exhaustion requirement due to "special circumstances."  In rejecting this judicial carve-out, the Court reminded that the PLRA's text mandates exhaustion, and courts "may not excuse a failure to exhaust" where the prisoner may have wrongfully believed the grievance may have been exhausted.  Id. at 1856-57.  Thus, if a prisoner has failed to exhaust, lower courts may only then look at whether the regulatory remedies were "available"—examples being whether the procedures are a "simple dead end," "so opaque" as to be rendered incapable of use, or are inaccessible due to prison administrators' attempts to thwart a grievance.  Id. at 1859.  However, the question in Plaintiff's case is not whether the grievance procedure was unavailable to Plaintiff for some "special circumstance" in November of 2016, but whether her July 2016 Grievance

sufficiently put prison officials on notice of her complaints as to an alleged continuing violation. Turley, 729 F.3d at 650; Reyes, 810 F.3d 654. Since the Court does not reach the second prong of the Albino test for summary judgment on the exhaustion issue (747 F.3d at 1168), Ross does not foreclose application of the outside-circuits' "continuing violation" theory.

*Conclusion to Section I*

Grievance SATF-3027 sufficiently notified prison officials as to Plaintiff's failure-to-protect allegations against Defendants Wetenkamp, Loyd and Martinez under the highly-persuasive "continuing violations" theory. Thus, summary judgement as to these three Defendants will be denied. However, Plaintiff failed to exhaust her claims against Lunes and Moreno, and so summary judgment must issue in their favor.

Further, since Defendants Lunes and Moreno were the only two Defendants sued in their individual capacity, the Court must dismiss with prejudice Plaintiff's prayers for monetary and punitive damages (Doc. No. 66 at ¶¶ 110-111), pursuant to the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Leer v. Murphy, 844 F.2d 628, 631–32 (9th Cir. 1988) (Eleventh Amendment bars official-capacity actions for damages); Daniels v. Savage, 2015 WL 6856989, at *3 (E.D. Cal. Oct. 27, 2015) ("California prisons are entitled to Eleventh Amendment immunity.").

**II.     Qualified immunity is not available for suits against officers sued in their official capacity, nor in suits for injunctive relief**

Defendants Cartagena, Charkow-Ross, Peterson, Wetenkamp, Loyd, and Martinez each seek summary judgment on the issue of qualified immunity. Without addressing the substance of these Defendants' arguments, the Court will deny the summary judgment request. Simply, a defendant who is sued in his or her official capacity is not eligible for a qualified immunity defense. See Cmty. House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 965 (9th Cir. 2010) ("Qualified immunity [] is a defense available only to government officials sued in their individual capacities[,] not to those sued only in their official capacities.") (citing Kentucky v. Graham, 473 U.S. 159, 165–68 (1985) ("In an official-capacity action, [defenses like qualified immunity] are

unavailable."). Further, qualified immunity is not available in suits for injunctive relief. <u>Pouncil v. Tilton</u>, 704 F.3d 568, 576 (9th Cir. 2012) ("[A] defense of qualified immunity is not available for prospective injunctive relief.") (citing <u>Vance v. Barrett</u>, 345 F.3d 1083, 1091 n. 10 (9th Cir.2003); <u>Presbyterian Church (U.S.A.) v. United States</u>, 870 F.2d 518, 527 (9th Cir.1989)).

The Court has granted summary judgment for Defendants Lunes and Moreno. <u>See</u> Section I, <u>supra</u>. The remaining six Defendants are sued in their official capacity. <u>See</u> Doc. No. 66. Thus, qualified immunity is not available for these Defendants. <u>Graham</u>, 473 U.S. at 165–68. Further, the Court has dismissed the prayer for compensatory and punitive damages under the Eleventh Amendment. Section I, <u>supra</u>. The only relief now available in the 2AC against these Defendants is Plaintiff's prayer for an injunction seeking a permanent single-cell designation. <u>See</u> Doc. No. 66. Qualified immunity is not available for this remedy. <u>Pouncil</u>, 704 F.3d at 576. Thus, Defendants' request for summary judgment on the issue of qualified immunity will be denied.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss (Doc. No. 90) is GRANTED in part and DENIED in part, pursuant to the logic expressed in this Order;
2. Plaintiff's prayers for monetary and punitive damages are DISMISSED WITH PREJUDICE;
3. The Clerk of the Court shall TERMINATE Defendants Lunes and Moreno from this action;
4. Plaintiff may proceed with her claim for injunctive relief against Defendants Cartagena, Charkow-Ross, Peterson, Wetenkamp, Loyd, and Martinez; and
5. The remainder of this case is referred back to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   September 24, 2018

SENIOR DISTRICT JUDGE